13891

CRAFT v. R. C. A. PHOTOPHONE, INC.

(175 S. E., 509)

*Messrs. I. C. Wannamaker* and *P. A. Murray, Jr.,* for appellant,

*Mr. John D. Nock,* for respondent,

July 26, 1934.

The opinion of the Court was delivered by MR. W. C. COTHRAN, ACTING ASSOCIATE JUSTICE.

H. M. Craft was the proprietor of a picture show in the Town of Cheraw. His show was not only a "movie" but was also a "talkie." In order that the talking part of the performance might be successful, he installed a system fur-

nished by the defendant under a rental agreement calling for stipulated payments and providing for certain penalties for breach of the rental contract.

Craft permitted one Ricker to operate the picture show, the defendant knowing nothing of the change. The defendant continued to look to Craft for the rental, and when it was $60 in arrears the defendant sent its representative, one Faulstich, from Charlotte to Cheraw to collect the rental in arrears and also $146.88 due the defendant for extra parts. Faulstich arrived in Cheraw about 9:30 a. m. and went directly to the picture show looking for Craft. Being unable to find him, Faulstich proceeded to dismantle the machine, taking from it some small part which was vital to its operation. Later in the day all interested parties met and talked over the indebtedness until the afternoon, when the bank in Cheraw had closed. They arrived at no settlement of their controversy. About this time Mr. Drake, the father-in-law of Craft, was called in and it was then agreed between the parties that Drake should go to Wadesboro, N. C., and get the money to pay the entire amount. Faulstich agreed to sit by the telephone in the hotel awaiting a call from Drake, and upon receiving a favorable message Faulstich would replace the removed part of the machine and see that the picture house was opened for business that night. The bank of Wadesboro was also closed for the day, but Drake obtained from the cashier a cashier's check for a portion of the amount due. Drake then called Faulstich as per the agreement and learned that Faulstich had left Cheraw. However, Faulstich returned later in the afternoon and another conference was held. Faulstich demanded cash from the beginning and the other parties could not comply. The cashier's check was not acceptable. In the meantime, the film for the show that night, not having been called for, was reshipped and the picture house was "dark"; that is, no show was given. Craft had sublet his picture house to a tenant by the name of Ricker, and after the failure to have

the show that night Ricker abandoned the premises, refusing further to be the tenant or sublessee. This suit was then brought by Craft against the defendant for actual and punitive damages; the plaintiff alleging breach of contract, loss of a tenant, and the closing of his picture show as the principal elements of his damage.

The defendant answered by a denial of the material allegations of the complaint. It also set out the contract under which the parties operated, alleging that it was fully justified under the terms of the contract in acting as it did.

At the close of the evidence the presiding Judge refused a motion of the defendant to direct a verdict in its favor made upon the ground that the evidence failed to sustain the allegations of the complaint as to damage sustained by the plaintiff. Thereupon the cause was submitted to a jury and a verdict was rendered for the plaintiff. The defendant has appealed and by proper exceptions presents to this Court its allegations of error.

The written contract between the plaintiff and the defendant herein provides that for any breach of the contract the defendant may "repossess the Equipment or any part thereof and shall have the irrevocable right to enter the Theatre or any other premises where the Equipment shall then be, and without notice or legal proceedings, repossess, and remove the Equipment or any part thereof, and Exhibitor will co-operate in such repossession and removal and pay any and all expenses of R. C. A. Photophone in connection therewith. Exhibitor will indemnify and hold R. C. A. harmless from and against any and all claims for damages by any parties whatsoever on account of any repossession or removal."

It is admitted that the rental was not paid as provided in the contract. It therefore appears that in so far as the conduct of Faulstich is concerned in removing the equipment he was only acting as he had a legal right to do under the contract as, up to this time, there was no evidence of waiver.

Another provision of the contract provided that should the plaintiff cease to own or operate the theatre without the consent of the defendant that such change in ownership or operation would constitute a breach of contract. However, Faulstich learned of this condition when he arrived in Cheraw, made no objection to it, and entered into a second contract with full knowledge of this condition. This condition of the contract was, therefore, waived by the conduct of Faulstich.

The new contract, above referred to, was thereupon entered into between the parties and referred to the balance due for parts as well as the amount of rental in arrears. It was agreed that the entire amount due the defendant would be paid in cash that afternoon. That the parts removed would be restored upon such payment and that the controversy would be ended. To this end the trip to Wadesboro was taken. Neither the conduct of Faulstich in failing intentionally to keep his promise to remain in Cheraw until he heard from Wadesboro nor the conduct of Hughes, the representative of the defendant in Atlanta, in wiring Faulstich to leave the county immediately with the parts of the machine, appeal to this Court in any other than a most unfavorable light. If the cash had been raised in Wadesboro, the situation would have been entirely different. Faulstich returned to Cheraw to get the cash under the second agreement, but when he again met the parties there was no cash available sufficient to pay the amount due.

Under these facts we do not see where the plaintiff had a cause of action against the defendant for damages. The whole trouble was brought about first by the plaintiff in failing to pay the agreed rental and next by failing to supply the cash for the settlement of the entire indebtedness. As this view disposes of the appeal, it is not necessary to consider in more detail the various exceptions. The motion of the defendant for a directed verdict should have been granted.

The judgment of the Circuit Court is, therefore, reversed and the complaint dismissed under Rule 27 of this Court.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.